USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 06/03/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAN R. PURGESS,

                    Plaintiff,

        v.

MARTINA PARAUDA AND DENIS MCDONOUGH,

                    Defendants.

No. 20-CV-2984 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Dr. Jan Purgess, an anesthesiologist formerly employed by the New York VA ("NYVA"), filed this *pro se* employment discrimination action against the Secretary of Veterans Affairs and Martina Parauda, the director of the VA NY Harbor Healthcare System. *See* Dkt. 1 ("Compl.").[1] The complaint alleges that, in refusing to provide him with reasonable accommodations following a medical leave of absence, Defendants discriminated against Purgess on the basis of age, sex, and disability in violation of Title VII, the Americans With Disabilities Act, the Rehabilitation Act, and the Age Discrimination in Employment Act. Purgess further claims that, after he filed a discrimination complaint, Defendants retaliated against him by denying his request to continue working in a part-time fee-based position after his retirement. *Id*.

    Before the Court is Plaintiff's motion seeking "a prohibitory preliminary injunction to maintain the status quo and avoid further retaliation," citing concerns that witnesses in this action

---

[1] The Clerk of Court is respectfully directed to substitute as a defendant Denis McDonough for Robert Wilkie, and to amend the caption as above. *See* Fed. R. Civ. P. 25(d).

could face threats of reprisals. *See* Dkts. 24-25. He proposes an order enjoining Defendants and other employees of the VA "not [to] retaliate against or engage in conduct interfering with their employment or career or engage in conduct that adversely affects any [Department of Veterans Affairs] employee because that person has given testimony, or otherwise assisted or participated in any way in the investigation, proceeding, or hearing under the above-captioned litigation." Dkt. 24. Defendants oppose the motion. Dkt. 40. For the following reasons, the motion is denied.

## BACKGROUND

The following facts are drawn from the complaint, as well as from the parties' declarations and affidavits submitted in conjunction with their briefing on the preliminary injunction motion. *See Sterling v. Deutsche Bank Nat'l Tr. Co. as Trs. for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 725 n.2 (S.D.N.Y. 2019) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence.") (citation omitted).

Dr. Purgess, an anesthesiologist, was employed for nearly 30 years at the NYVA in Manhattan, until he retired in February 2019. Compl. ¶¶ 13–14, 47. In July 2018, Purgess underwent a knee replacement surgery, which required him to take a three-month leave of absence. *Id.* ¶ 75. He also underwent a heart procedure in September 2018. *Id.* ¶ 76. Purgess requested a modification of his duties and hours upon returning to work, but alleges that his request was denied. *Id.* ¶¶ 81-82. The complaint asserts that this denial of accommodation amounted to disability discrimination. *Id.* ¶ 2. Purgess also claims that it constituted age and sex discrimination, as similar requests for accommodations were given to younger, female anesthesiologists. *Id.* ¶¶ 89–91. In December 2018, Purgess contacted an EEO counselor about these events, which led to the filing of a formal discrimination complaint in March 2019. *Id.* ¶¶

96. In addition to claiming that he was denied a reasonable accommodation, Purgess also complained of harassment and a hostile work environment. *Id.* ¶ 26. Defendants dispute Plaintiff's characterization of all of these events, including his contention that Dr. Lily Yuan denied his accommodation request. *See*, *e.g.*, Dkt. 41-2 at 5 (Yuan Aff.); Dkt. 40 at 3–4.

Following his complaints of discrimination, Purgess sought to transition from full-time employment to a "fee-basis" position referred to as a "Medical Officer of the Day" (MOD). Compl. ¶ 23. This is an hourly position for as-needed work that, according to Purgess, has been occupied at times by retired anesthesiologists. *Id*. ¶¶ 33-34. When Purgess planned his retirement, he alleges, he "understood and was explicitly told that he could convert his full-time anesthesiology position to the hourly fee basis MOD position." *Id*. ¶ 36. Purgess accordingly retired in February 2019, with the expectation that he would be able to transfer into the MOD position. *Id*. ¶¶ 41–44. He alleges that when Defendants learned of his EEO complaint, they unlawfully retaliated against him by denying his transition to the MOD position, despite having approved a similar request for a purportedly similarly situated employee, Dr. William Molinari. *Id*. ¶¶ 54, 64. Purgess further maintains that when he pointed out the discrepancy between his treatment and that of Molinari, Molinari was fired. Dkt. 25 at 21. Defendants dispute that there was anything improper or retaliatory about the denial of Purgess's request to transition to the MOD position. *See* Dkt. 40 at 4–5. In an email to Purgess explaining the denial of his MOD request, Defendant Parauda told Purgess that at one point, it was common practice at the VA New York Harbor for retired full-time physicians to transition to fee-basis appointments. Dkt. 41-4 at 5. She understood current VA policy, however, to require a different approach, asserting that the VA Handbook provides that fee-basis appointments of retirees should not be used to provide as-needed fee-based coverage if full- or part-time appointments can be made. *Id.* at 2-3.

Parauda explained the discrepancy between the treatment of Drs. Purgess and Molinari as a result of the fact that, because Molinari retired not from the VA New York Harbor but from a different VA facility, Parauda did not know that he had retired from the VA at the time she authorized his fee-basis appointment. Dkt. 41-4 at 7.

Purgess commenced this action by filing the *pro se* complaint on April 14, 2020. Defendants sought, with Plaintiff's consent, three extensions of time in which to respond to the complaint. *See* Dkts. 15, 17, 19. They filed answers on November 20, 2020, *see* Dkts. 20–22, and the Court referred the action to mediation on November 24, 2020, Dkt. 23, which proved unsuccessful, Dkt. 29. On December 17, 2020, approximately eight months after filing the complaint, Plaintiff filed the instant motion for a preliminary injunction. Dkt. 24.

Plaintiff argues that an injunction is necessary to "maintain the status quo and avoid further retaliation." Dkt. 25 at 5. He asserts that, due to Defendants' "established pattern of retaliation," witnesses will be dissuaded from offering truthful testimony, and claims that "[p]otential witnesses have expressed concerns of retaliation." *Id*. *See also id.* at 17 ("[C]urrent NYVA anesthesiologists have expressed their retaliation fears during this litigation."). To support his claim of a pattern of retaliation, Plaintiff's motion papers discuss the cases of several other VA employees who claimed to have been retaliated against by VA officials over the last decade, including Dr. Maryam Nia and David Vespe, RN, *id*. at 12-15, and he also asserts that Defendants fired Dr. Molinari after Purgess pointed out to Defendants that they had approved Molinari's post-retirement transition to a fee-based position, *id*. at 21. Plaintiff further discusses the case of Dr. Michael Katz, a VA physician who was fired in 2015, and whose removal Purgess asserts was in retaliation for whistleblowing. *See* Dkt. 32.

Defendants oppose the preliminary injunction motion principally on the basis that Plaintiff has failed to show that an injunction is necessary to avoid irreparable harm. Dkt. 40 at 12. Defendants object to Plaintiff's characterization of the cases of Molinari, Nia, Vespe, and Katz as establishing a pattern of retaliation. *Id*. at 15-18. Defendants argue, moreover, that the motion is defective in that (1) Plaintiff delayed in making it, undercutting his claim that emergency relief is necessary; (2) past incidents of retaliation do not suffice to establish an "actual and imminent" threat of irreparable harm to witnesses in this case, *see Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002); and (3) the proposed injunction requested by Plaintiff amounts to an "obey-the-law" order whose command that Defendants refrain from retaliation would be too vague to satisfy Fed. R. Civ. P. 65(d). Dkt. 40 at 13-15.

## LEGAL STANDARD

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted), and it "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original, internal quotation marks and citation omitted). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). To make this showing,

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974). Instead, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand)*, 437 F. App'x 57, 58 (2d Cir. 2011) (quoting *Faiveley*, 559 F.3d at 118). "[I]rreparable harm is measured in terms of the harm arising during the interim between the request for an injunction and final disposition of the case on the merits." *Jayaraj v. Scappini*, 66 F.3d 36, 40 (2d Cir. 1995). If the movant does not carry his burden to establish that he will suffer irreparable harm absent the issuance of an injunction, a court need not consider the other factors, such as likelihood of success on the merits. *See id*. at 38-40.

## DISCUSSION

For the following reasons, Plaintiff's proposed preliminary injunction is denied.

### I. A Preliminary Injunction is Not Necessary to Prevent Imminent, Irreparable Harm

There is some precedent for the type of anti-retaliation injunction sought by Purgess. Because unlawful retaliation "carries with it the distinct risk that other employees may be deterred from protecting their rights," such risks "may be found to constitute irreparable injury." *Holt v. Continental Group, Inc.*, 708 F.2d 87, 91 (2d Cir. 1983). There is not, however, a "presumption of irreparable injury in every action by a plaintiff alleging a retaliatory discharge." *Id*. Instead, plaintiffs seeking an anti-retaliation preliminary injunction must still make the "traditional showing" of irreparable injury, *id*., and courts weigh such requests on a "case-by-

case" basis, *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 512 n.6 (2d Cir. 2005). The Second Circuit has instructed courts to apply "a particularly stringent standard for irreparable injury in government personnel cases," *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 766 F.2d 715, 721 (2d Cir. 1985); *accord Moore*, 409 F.3d at 512 n.6 (internal quotation marks omitted). To meet his burden, then, Plaintiff must make a clear showing "that witnesses in this case would be intimidated from testifying on plaintiff's behalf." *Moore*, 409 F.3d at 512.

In the Court's view, Plaintiff has not demonstrated the existence of an "actual and imminent" threat to current VA employees who may be witnesses in this case. *Kamerling*, 295 F.3d at 214. The closest Plaintiff comes to establishing a threat to witnesses in this litigation is his speculation that Dr. Molinari was fired to avoid there being a discrepancy between Molinari and Purgess, *i.e.*, to cover up that Purgess's transition to the MOD position was denied as retaliation for his discrimination complaint. *See* Dkt. 25 at 21. But Defendants adduce evidence that casts doubt on that speculation. *See* Dkt. 42 ¶¶ 3-4 (Parauda Decl.) (explaining that Molinari was not fired but that his contract expired, and that he continued to provide fee-basis services for several months after Purgess pointed out the discrepancies in their treatment); Dkt. 40 at 9. That is far from the end of the matter, of course, and further discovery regarding Dr. Molinari's case may prove useful for resolving this matter on the merits. At this juncture, however, in light of the disputed circumstances surrounding Dr. Molinari's departure from the MOD position, Plaintiff's speculation regarding his case is insufficient to constitute a clear showing of a threat to government employees who might give testimony in this litigation. *See Moore*, 409 F.3d at 512 n.6.

Beyond that, Plaintiff provides no direct evidence of any current VA employees—the intended beneficiaries of the proposed injunction—who may be asked to provide evidence in this matter and who reasonably fear coming forward. He asks the Court to infer a general fear of retaliation on the part of VA employees who may be witnesses in this case because of several previous incidents of alleged retaliation involving VA officials over the course of a decade. Even assuming Plaintiff has accurately identified retaliatory conduct in each of these prior incidents, however, they do not furnish a basis to find an actual and imminent threat of retaliation to witnesses here. *See Garcia v. Arevalo*, No. 93 CIV. 8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("[A]n allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction.") (citing *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30 (2d Cir. 1991)); *Kamerling*, 295 F.3d at 214. Although past retaliatory conduct might, in some cases, provide a basis for a finding of irreparable harm because of the chilling effect retaliation has on potential witnesses, *Holt*, 708 F.2d at 91, a plaintiff must nonetheless "show some evidence of actual chill that would be cured by the requested injunction." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010); *see also Moore*, 409 F.3d at 512 (plaintiff must also show that other employees were "aware of" and "intimidated by" the actions said to create a threat of witness intimidation). Plaintiff has not carried that burden with more than speculative and conclusory statements about unnamed potential witnesses. Dkt. 25 at 5, 17. Such statements present the sort of "remote or speculative" claim of injury that the Second Circuit has cautioned does not suffice to establish an imminent, irreparable harm. *Kamerling*, 295 F.3d at 214. *See also Stern v. Shulkin*, 18 CV 0071, 2019 WL 6895417, at *5 (N.D.N.Y. Dec. 18, 2019) (plaintiff's "unsupported" assertion that she had "been told that other individuals will not come forward with complaints of harassment or retaliation for

fear of reprisal" was "insufficient for the Court to determine that any chilling effect is anything but speculative"); *Bennett v. Lucier*, 239 F. App'x 639, 640 (2d Cir. 2007) (injunctive relief was not warranted where plaintiff failed to "show some evidence of actual chill that would be cured by the requested injunction").

Plaintiff points to the Second Circuit's decision in *Mullins v. City of New York*, but there the evidence of a threat of a retaliation was much stronger. In that case, the plaintiffs were 4,300 New York City police sergeants who brought a case against the City under the Fair Labor Standards Act. There was concrete evidence that the NYPD had directed its Internal Affairs Bureau (the department's disciplinary arm) to investigate a number of the plaintiffs who had given testimony and to require those plaintiffs, through an unusual procedure, to turn over documents and information. *Mullins*, 626 F.3d at 49. The district court's injunction, affirmed by the Second Circuit, was for the defendants to stop "investigating or disciplining any plaintiff in this matter based on his or her testimony or participation in this lawsuit." *Id*. at 51. The district court found that the evidence clearly showed that absent such injunctive relief, "numerous plaintiffs would likely (and reasonably) withdraw from this litigation rather than testify and face a line-by-line IAB interrogation" regarding their testimony. *Id*. at 55. Here, there is no comparable evidence of a specific, "actual and imminent, not remote or speculative" threat of retaliation against current VA employees. *Kamerling*, 295 F.3d at 214. Keeping in mind Plaintiff's burden to "show some evidence of actual chill that would be cured by the requested injunction," *Mullins*, 626 F.3d at 55, and his more general burden to establish by a "clear showing" his entitlement to an injunction, *Mazurek*, 520 U.S. at 972, the Court finds that Plaintiff has not shown that an injunction is necessary to avoid irreparable harm.

An additional factor weighing against a finding of irreparable harm is Plaintiff's delay in moving for emergency relief. "[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). Here, the complaint was filed in April 2020, and Plaintiff did not move for a preliminary injunction until December 2020. The motion for a preliminary injunction does not appear to rely on any new evidence that arose in those eight months. "[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998); *see also Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction."); *Habitat for Horses v. Salazar*, 745 F. Supp. 2d 438, 449 (S.D.N.Y. 2010) (collecting cases). Although the Court is reluctant to apply these principles strictly in a *pro se* action, Plaintiff's delay does, to at least some extent, counsel against the finding of an imminent harm that could be remedied only by emergency relief.

To be clear, the Court has made no findings about Plaintiff's likelihood of success on the merits. *See Kamerling*, 295 F.3d at 214 (irreparable harm must be established "before the other requirements for an injunction will be considered"). It is yet to be seen whether Purgess will prevail on his claim that the denial of his request to transfer to the MOD position was retaliatory in nature, and he will have the full opportunity to litigate that claim going forward. But he has not carried his burden to establish that the preliminary injunction he proposes would prevent an imminent harm "which cannot be adequately redressed by final relief on the merits." *Id*.

## II. The Proposed Injunction Merely Reiterates Defendants' Existing Legal Obligations

The Court further denies Plaintiff's motion for a preliminary injunction for an additional, alternative reason: the proposed injunction is too vague, and merely reiterates Defendants' existing statutory obligations. Rule 65(d) of the Federal Rules of Civil Procedure provides that every injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." As the Supreme Court has emphasized, this rule is not a "mere technical requirement[]"; because "an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). For this reason, proposed injunctions that merely reinforce or reiterate statutory obligations are frequently rejected as impermissible "obey the law" injunctions. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) ("[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law."); *Sanders v. Air Line Pilots Ass'n, Int'l,* 473 F.2d 244, 247 (2d Cir. 1972); *Monsour v. New York State Off. for People with Developmental Disabilities*, No. 13-CV-336 (BKS), 2018 WL 3349233, at *20 (N.D.N.Y. July 9, 2018) (proposed order that would have "essentially requir[ed]" defendant to "comply with the Rehabilitation Act's prohibition against retaliation" was "plainly improper" as an "'obey the law' injunction").

Here, Plaintiff seeks an order for VA officials to "not retaliate against or engage in conduct interfering with their employment or career or engage in conduct that adversely affects any DVA employee because that person has given testimony, or otherwise assisted or participated in any way in the investigation, proceeding, or hearing under the above-captioned litigation." Dkt. 24. The law already imposes on Defendants an obligation not to take adverse

actions against employees because of their participation in litigation. *See* 42 U.S.C. § 2000e–3(a) (Title VII); 42 U.S.C. § 12203(a) (ADA); 29 U.S.C. § 623(d) (ADEA); 29 U.S.C. § 794(d) (Rehabilitation Act). Indeed, the Court has reminded Defendants of this obligation. *See* Dkt. 26. The proposed injunction would not impose any duties on Defendants that are more specific or concrete than their existing duties, and would leave open to judicial interpretation questions of whether any actions taken with respect to existing employees were taken "because" of the employee's participation in this litigation. Defendants thus could not reasonably "ascertain from the four corners of the [proposed] order precisely what acts are forbidden." *Sanders*, 473 F.2d at 247. The proposed order must accordingly be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is denied without the need for discovery or an evidentiary hearing. *See Moore*, 409 F.3d at 508 (district court did not abuse its discretion in denying request for an evidentiary hearing where "there [was] no evidence that defendants have intimidated . . . witnesses from participating in litigation"). As the parties will recall, at the initial pretrial conference held on March 25, 2021, the Court agreed that it would be premature to enter the parties' proposed case management plan until after the resolution of the preliminary injunction motion. No later than one month from the date of this order, the parties are directed to meet and confer regarding discovery and to submit a revised case management plan.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 24.

SO ORDERED.
Dated: June 3, 2021
New York, New York

Ronnie Abrams
United States District Judge